UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 2:25-cr-00033-TL |
| Plaintiff, | |
| v. | ORDER ON DEFENDANT THOMPSON'S MOTION TO REVOKE DETENTION ORDER |
| AARON THOMPSON | |
| Defendant. | |

This matter is before the Court on Mr. Aaron Thompson's Motion to Revoke Detention Order ("Motion to Revoke Detention"). Dkt. No. 108. Mr. Thompson appeals the April 23, 2025, order of the Honorable Brian A. Tsuchida, United States Magistrate Judge. Dkt. No. 34. Having conducted a *de novo* review and considered the Indictment (Dkt. No. 1), Mr. Thompson's motion, the Government's response (Dkt. No. 115), Mr. Thompson's reply (Dkt. No. 118) as well as the relevant record, and finding oral argument unnecessary, CrR 12(b)(12), the Court DENIES Mr. Thompson's motion.

ORDER ON DEFENDANT THOMPSON'S MOTION TO REVOKE DETENTION ORDER – 1

## I.    BACKGROUND[1]

The charges in this case concern allegations that Mr. Thompson and his two co-defendants—Carlton Mitchell and Samuel Solomon—flew into Portland, Oregon (with Mr. Thompson and Mr. Mitchell arriving from Texas and Mr. Solomon arriving from West Virginia) to ultimately meet with Tre El Johnson at a West Seattle Airbnb and purchase from Mr. Johnson a large quantity of marijuana that they intended to sell outside of Washington.[2] In Portland, Mr. Thompson, Mr. Mitchell, and Mr. Solomon rented cars to drive to Seattle and then stopped at a Home Depot in Vancouver, Washington, to purchase a 20-pack of zip ties, a phone cable, and COVID masks.

The three men and Mr. Johnson all arrived at the West Seattle Airbnb in the late evening hours of November 2, 2022. Around 12:18 a.m. on November 3, 2022, Mr. Solomon can be seen running out the front door of the house, and multiple gunshots can be heard. It appears Mr. Mitchell and Mr. Thompson initially fled the house through a back bedroom window. Approximately five minutes after the gunfire, Mr. Mitchell appeared at the front door of the Airbnb, followed by Mr. Thompson. Both men reentered the house and dragged out garbage bags that were likely filled with marijuana. Mr. Thompson reentered the house at least one more time before he and Mr. Mitchell drove away.

When Seattle Police Officers arrived at the house around 12:34 on November 3, 2022, the front door was open, and the officers found Mr. Johnson a few feet inside the front doorway

---

[1] Unless otherwise noted, the facts described in this section are taken from the Government's response. Dkt. No. 115 at 3–15. Mr. Thompson does not appear to dispute any of the facts contained in this section. *See generally* Dkt. No. 118.

[2] Mr. Johnson regularly sold marijuana to Mr. Solomon and Mr. Mitchell in deals ranging from $20,000 to $70,000–$80,000, and they are alleged to have doubled or tripled the money they paid for the marijuana when they sold it outside Washington. On this occasion, Mr. Johnson told a confidential witness that Mr. Solomon and Mr. Mitchell wanted to purchase more than $100,000 of marijuana (more than 100 pounds) from Mr. Johnson.

ORDER ON DEFENDANT THOMPSON'S MOTION TO REVOKE DETENTION ORDER – 2

bleeding, unresponsive, and unconscious on the living room floor. While he had a weak pulse and the officers attempted CPR, Mr. Johnson was pronounced dead at the scene. The death was classified as a homicide with the cause of death being a single gunshot wound that entered in his back.

Blood spots to which Mr. Johnson was a contributor were found on the floor in the kitchen and dining room area, suggesting that he was in the kitchen area when he initially fired his gun.[3] Twelve shell casings were recovered from the kitchen and living room area. It appears that Mr. Johnson's pistol was fired 11 times and that he was shot with the twelfth bullet that came from a different 9mm handgun. Neither gun has been recovered.

A few days after the incident on November 8, 2022, Mr. Thompson retained a local Seattle area law firm to represent him in this matter.[4] On March 12, 2025, a grand jury indicted Mr. Thompson on two criminal counts: (1) Conspiracy to Possess Marijuana with Intent to Distribute, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(D), and 846; and (2) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii). Because a firearm was discharged during the § 924(c) offense, the mandatory minimum penalty is ten years of imprisonment and the maximum penalty is life imprisonment. *See* 18 U.S.C. § 924(c)(1)(A)(iii).

The Government moved for a pretrial detention hearing, asserting that the case was eligible for detention under 18 U.S.C. § 3142(f) because of a risk of flight and the safety of any other person or the community. Dkt. No. 24 at 2; *see also* Dkt. No. 29 at 1. After Mr. Thompson's detention hearing, United States Magistrate Judge Brian A. Tsuchida ordered Mr.

---

[3] This information is from Mr. Thompson's motion. Dkt. No. 108 at 6.

[4] Dkt. No. 108 at 3.

ORDER ON DEFENDANT THOMPSON'S MOTION TO REVOKE DETENTION ORDER – 3

Thompson's detention, concluding that "there are no conditions which the defendant can meet which would reasonably assure the defendant's appearance as required or the safety of any other person and the community." Dkt. No. 34 at 1. First, Judge Tsuchida found that Mr. Thompson had a criminal history going back to 2003 when he was convicted of criminal possession of a firearm and burglary in the second degree and sentenced to prison, and that "although years [had] passed since Defendant's last criminal matter, the present allegations show he has continued to engage in serious criminal activity." *Id.* at 1–2. Judge Tsuchida also noted that Mr. Thompson traveled from Texas to this District in relation to drug trafficking activity that resulted in the shooting death of a person, and then left the state. *Id.* at 2. Judge Tsuchida found that, on balance, Mr. Thompson's ties to Texas were insufficient to support release. *Id.*

Mr. Thompson moves for the revocation of the detention order and seeks his release pending trial. Dkt. No. 108. The Government opposes the request. Dkt. No. 115.

## II. LEGAL STANDARD

### A. Standard of Review

If a person is ordered detained by a magistrate judge, the individual "may file, with the court having original jurisdiction over the offense, a motion for revocation of the order." 18 U.S.C. § 3145(b). A district court reviews the detention order *de novo*. *United States v. Koenig*, 912 F.2d 1190, 1191–93 (9th Cir. 1990).

### B. Presumption of Detention

Where a court finds probable cause that a defendant has committed certain types of offenses, "it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community[.]" 18 U.S.C. § 3142(e)(3). However, the presumption is subject to rebuttal by a defendant. 18 U.S.C. § 3142(e)(3). In addition, while the presumption shifts the burden of production to the defendant,

ORDER ON DEFENDANT THOMPSON'S MOTION TO REVOKE DETENTION ORDER – 4

the burden of persuasion remains with the government. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008). Finally, when a defendant rebuts the presumption, "the presumption 'remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g).'" *Id.* (*quoting United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)).

**C.      Detention Standard**

The Bail Reform Act ("the Act") requires that a court release a criminal defendant on personal recognizance or on an unsecured appearance bond before trial unless there is a determination that such release "will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). This default requirement is in accord with the principle that "[i]n our society, liberty is the norm, and detention prior to trial . . . is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Ninth Circuit cautions that "[o]nly in rare cases should release be denied . . . ." *United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) (citing *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)). Further, "doubts regarding the propriety of release are to be resolved in favor of the defendant." *Id.* If a court determines that release will not reasonably assure the defendant's appearance and the safety of the community, the court must impose "the least restrictive further condition, or combination of conditions," that will reasonably assure these goals. 18 U.S.C. § 3142(c)(1)(B). The Act only requires detention where a court finds that *no* such condition or combination or conditions can accomplish these ends. 18 U.S.C. § 3142(e)(1).

If the Government moves for detention pursuant to 18 U.S.C. § 3142(f) and a defendant is eligible for a detention hearing, then the court must determine whether there are conditions of release that reasonably assure two goals: "the appearance of the defendant as required" and "the

ORDER ON DEFENDANT THOMPSON'S MOTION TO REVOKE DETENTION ORDER – 5

safety of any other person and the community." 18 U.S.C. § 3142(g). In making its detention determination, a court considers the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *Id*.

Ultimately, the Government bears the burden to prove either (1) by a preponderance of the evidence that there are no conditions that reasonably will assure the defendant's appearance as required, or (2) by clear and convincing evidence that there are no conditions which reasonably will assure the safety of the community. 18 U.S.C. § 3142(f); *Motamedi*, 767 F.2d at 1406 ("the [Bail Reform Act of 1984] permits the pretrial detention of a defendant without bail where it is demonstrated either that there is a risk of flight or no assurance that release is consistent with the safety of another person or the community."). An order of detention "shall [not] be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j).

### III.    DISCUSSION

To make its determination, the Court first evaluates the presumption of detention contained in 18 U.S.C. § 3142(e)(3) and then considers the factors enumerated in 18 U.S.C. § 3142(g).

**A.    Rebuttal of the Presumption of Detention**

The list of offenses that trigger the presumption of detention includes an offense under section 18 U.S.C. § 924(c). 18 U.S.C. § 3142(e)(3)(B). Here, Mr. Thompson has been indicted on the charge of Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of

18 U.S.C. § 924(c)(1)(A(iii). Dkt. No. 1 at 2. Although the Ninth Circuit has not ruled on the issue, almost every Circuit has held that an indictment is sufficient to trigger the presumption. *See, e.g.*, *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010), *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) (collecting cases); *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991); *United States v. Contreras*, 776 F.2d 51, 55 (2d Cir. 1985); *cf. Kaley v. United States*, 571 U.S. 320, 328 (2014) (holding that a proper indictment "conclusively determines the existence of probable cause" (quoting *Gerstein v. Pugh*, 420 U.S. 103, 117 n.19 (1975))). Courts in this district have reached the same conclusion. *See, e.g.*, *United States v. Kuyateh*, No. C24-186, 2025 WL 241112, at *2 (W.D. Wash. Jan. 17, 2025) (citing *United States v. Valenzuela*, No. C12-062, 2012 WL 1377087, at *2 (W.D. Wash. Apr. 19, 2012)); *United States v. Wilson*, No. C24-93, 2024 WL 3950434, at *4 (W.D. Wash. Aug. 27, 2024) (citing *Kaley*, 571 U.S. at 329 n.6). Accordingly, the Court finds that the presumption of detention is triggered here. However, as Mr. Thompson proffers evidence to rebut the presumption (*see generally* Dkt. No. 108), the Court will consider the Section 3142(g) factors. *See Hir*, 517 F.3d at 1086 ("If a defendant proffers evidence to rebut the presumption of dangerousness, the court considers four [§ 3142(g)] factors in determining whether the pretrial detention standard is met").

**B.    The § 3142(g) Factors**

    **1.    Nature and Seriousness of the Offense Charged**

The allegations in this case are, without question, of a very serious nature. According to the Government, Mr. Thompson, along with his two co-defendants, traveled from out of state to Seattle to purchase an estimated $100,000 in marijuana for sale outside of Washington. They intended to purchase the marijuana from Mr. Johnson who, in the process of the transaction, was shot and killed. *See infra* Section I.

Therefore, the nature and seriousness of the allegations weigh in favor of detention.

### 2.    Weight of the Evidence

The Government has gathered substantial evidence in this case which includes cell phone records, flight records, receipts, information from witnesses (including a confidential witness), video surveillance, and forensic evidence. Dkt. No. 115 at 4. But despite all the evidence the Government has and may ultimately bring to bear in this case, Mr. Thompson is presumed innocent before trial, and nothing in the Court's analysis may be construed as modifying or limiting that presumption. 18 U.S.C. § 3142(j). Further, the Ninth Circuit has repeatedly declared that the weight of the evidence is the least important factor, and the statute neither requires nor permits a pretrial determination of guilt. *Gebro*, 948 F.2d at 1121. *See also Hir*, 517 F.3d at 1090; *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir. 1986); *Motamedi*, 767 F.2d at 1408.[1]

Therefore, while the Court finds that the weight of the evidence weighs in favor of detention, it treats this factor as the least important.

### 3.    The History and Characteristics of Mr. Thompson

Mr. Thompson has an extensive felony criminal history dating back to 2003 which includes convictions for criminal possession of a weapon, burglary, assault, and the criminal sale of controlled substances, Dkt. No. 32 at 3–4 and Mr. Thompson spent most of the years between 2003 through 2016 in prison. *Id.* Other than a drunk driving offense in December 2016 (*id.* at 4), Mr. Thompson has not been arrested since 2016. While several years have passed since Mr. Thompson's last conviction, the allegations in the present matter appear to be similar in nature to some of his previous criminal convictions, undermining Mr. Thompson's arguments about the age of his convictions weighing in his favor. The Court acknowledges and considers the letters of

support for Mr. Thompson.[5] But in the end, given his criminal history and the present allegations (along with the evidence currently before the Court), neither the gap in his criminal record nor the letters of support provide sufficient comfort to the Court to outweigh its concerns regarding the alleged continued criminal activity by Mr. Thompson.

Therefore, under § 3142(g)(3)(A) and (B), the history and characteristics of Mr. Thompson weigh in favor of detention.

### 4.    Danger to Any Person or the Community

The relevant inquiry is whether the Government can prove by clear and convincing evidence that Mr. Thompson poses a *future* harm of danger to the community. *See Salerno*, 481 U.S. at 751 ("Under the Bail Reform Act, . . . a judicial officer evaluates the likelihood of future dangerousness . . . .").

Mr. Thompson's counsel asserts that the fact that Mr. Thompson retained counsel a few days after the incident undercuts any claim of him being a flight risk. Dkt. No. 108 at 3. However, Mr. Thompson's retaining counsel a few days after the incident also reveals that he felt he required legal representation for the events that transpired.

Further, while it is unclear what precipitated the gunfire and which of the co-defendants fired the shot that killed Mr. Johnson, it is evident that this encounter went terribly wrong. It is also clear from the evidence that Mr. Thompson was aware that shots had been fired and that he reentered the West Seattle Airbnb on the early morning of November 3, 2022, less than five minutes after the shots had been fired. Given Mr. Thompson's emphasis on his fleeing from gunfire through the back window, the Court finds it highly unlikely that Mr. Thompson would have reentered the Airbnb had he believed Mr. Johnson was in a condition to be able to operate a

---

[5] While the letters of support and proposed discharge plan provide support for Mr. Thompson's argument regarding the issue of risk of flight, the Court ultimately does not reach that issue. *See infra* n. 6.

handgun. Further, Mr. Thompson had to have passed Mr. Johnson's car (which was still in the driveway) both when reentering the Airbnb and while dragging the bags out, indicating Mr. Johnson was likely still in the house. And Mr. Thompson reentered the Airbnb not once, but twice, to bring out garbage bags, demonstrating that he valued whatever was in the garbage bags first and utmost. Given the evidence in this case presented to the Court thus far coupled with his criminal history and the similarly situated underlying allegations in this case, the Court cannot find that Mr. Thompson is not a danger to any person or the community.

Therefore, this factor weighs in favor of detention.

Given all four factors weigh in favor of detention coupled with the presumption of detention that remains, the Court finds that the Government has met its burden to prove by clear and convincing evidence that there are no conditions which reasonably will assure the safety of the community.[6] As the Court has found the Government has met its burden with regard to the safety of the community, the Court need not reach the issue of risk of flight. *Motamedi*, 767 F.2d at 1406 ("the pretrial detention of a defendant without bail [is permitted] where it is demonstrated *either* that there is a risk of flight or no assurance that release is consistent with the safety of another person or the community) (emphasis added).

//

//

//

//

//

//

---

[6] Even if the Court found that this factor was a close call, three of the four factors would still weigh in favor of detention.

ORDER ON DEFENDANT THOMPSON'S MOTION TO REVOKE DETENTION ORDER – 10

## IV.    CONCLUSION

Accordingly, the Court DENIES Mr. Thompson's motion for the revocation of Judge Tsuchida's detention order.

Dated this 23rd day of February, 2026.

Tana Lin
United States District Judge